UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| JEREMY BRIAN RIALS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. _____ |
| § | |
| W&W-AFCO STEEL LLC, § | |
| HIRSCHFELD STEEL GROUP LP, § | |
| and GEORGE MONROE HIGGINS, § | |
| § | |
| Defendants. § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

NOW COMES Plaintiff JEREMY BRIAN RIALS (hereinafter "Plaintiff") and files this Plaintiff's Original Complaint against Defendants W&W-AFCO STEEL LLC, HIRSCHFELD STEEL GROUP LP, and GEORGE MONROE HIGGINS, and as such would respectfully show unto the Court as follows:

### I.  NATURE OF THIS CIVIL ACTION

1.1   This is a civil action for money damages to remedy and compensate Plaintiff Jeremy Brian Rials for the catastrophic and permanent injuries he sustained, including a traumatic brain injury, which were proximately caused by Defendants negligent and reckless parking of a commercial tractor-trailer with double oversized trailers (likely without the requisite permit) on the roadway obstructing and occupying the Emergency Shoulder facing the wrong direction of traffic without any warning flares, reflective

triangles, or other warnings in the city limits of Waskom, Texas, which expressly prohibits any thru trucks.  Plaintiff will show Defendants were negligent, negligent per se, grossly negligent, and violated a host of regulations, rules and standards that proximately caused Plaintiff's injuries and damages.

## II.     PARTIES

2.1     Plaintiff JEREMY BRIAN RIALS is an individual, resident and citizen of the State of Louisiana.

2.2     Defendant W&W-AFCO STEEL LLC (hereinafter "Defendant AFCO Steel") is a Delaware corporation authorized to do and doing business in the State of Texas, with its principal place of business at 1730 W. Reno, Oklahoma City, Oklahoma 73106. Defendant W&W-AFCO STEEL LLC may be served by serving its registered agent for service of process CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201, pursuant to Federal Rule of Civil Procedure 4.

2.3     Defendant HIRSCHFELD STEEL GROUP LP (hereinafter "Defendant Hirschfeld") is believed to have been a Texas corporation with a Texas principal place of business that, since shortly before or after the date of the commercial motor vehicle collision at issue, has been formally and legally merged into Defendant W&W-AFCO STEEL LLC and is included herein as a defendant out of an abundance of caution. Defendant HIRSCHFELD STEEL GROUP LP may be served by serving its registered agent for service of process Robert J. Conner at 1400 Civic Place, Suite 250, Southlake, Texas 76092, pursuant to Federal Rule of Civil Procedure 4.

2.4    Defendant GEORGE MONROE HIGGINS (hereinafter "Defendant Higgins") is an individual, resident and citizen of the State of Alabama.  Defendant GEORGE MONROE HIGGINS may be served by serving him at his residence located at 45 Country Road 752, Verbena, County of Chilton, Alabama 36091, pursuant to Federal Rule of Civil Procedure 4.

### III.    JURISDICTION AND VENUE

3.1    This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because Plaintiff and the Defendants are citizens of different states and the amount in controversy well exceeds $75,000.00, excluding interest and costs.

3.2    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this district.  Specifically, the commercial motor vehicle wreck at issue occurred in this district, in Waskom, Harrison County, Texas.

### IV.    FACTUAL ALLEGATIONS

4.1    Upon information and belief, Defendant AFCO Steel and Defendant Hirschfeld are motor carriers for profit that operate commercial motor vehicles (CMV) on public roads across the country, including regularly in Texas. Among those commercial vehicles operated by Defendants in Texas is (or at least was) an International Tractor-Trailer with License Plate C827045, VIN 2GTEK19K2R1584610 (hereinafter "Tractor-Trailer"). Defendants AFCO Steel and Hirschfeld placed Defendant Higgins behind the

wheel of this Tractor-Trailer despite Higgins' apparent lack of experience, qualification and/or proper training in basic safety laws and driving, as well as policies and procedures and trucking industry standards. Higgins is believed to have been an employee of Defendants AFCO Steel and/or Hirschfeld.  And, in any event, Higgins was certainly a statutory employee under 49 CFR 390.5, acting in the course and scope of his employment for Defendants AFCO Steel and/or Hirschfeld at the time of the collision at issue herein.

4.2   On or about May 16, 2019, Defendant Higgins was operating the International Tractor-Trailer owned by Defendants AFCO Steel and/or Hirschfeld.  He was pulling two large flatbed trailers also owned by Defendants AFCO Steel and/or Hirschfeld – Trailer 1 bearing License Plate X10467, VIN 1TKS036302M050719 and Trailer 2 bearing License Plate Y96080, VIN 1TKH04260EM054838.

4.3   Defendant Higgins was carrying an oversized load consisting of a large steel I-beam on the double trailers which required a permit issued by the Texas Department of Motor Vehicles.  Upon information and belief, Defendants did not have a proper permit for this load.  Any permit issued would have required Defendants to travel a certain route to their destination, and on information and belief, through the City of Waskom where this collision occurred would not have been the permitted route.

4.4   Upon information and belief, Defendant Higgins was operating the Tractor-Trailer eastbound on Interstate 20; and then, for some yet unknown reason, Defendant Higgins exited onto US Highway 80 and proceeded eastbound through the City of Waskom, Texas.

4.5     The City of Waskom prohibits thru trucks and has signs posted "NO THRU TRUCKS US 80" as shown here:



4.6     Defendants AFCO Steel, Hirschfeld and Higgins knew or should have known that "thru trucks" were prohibited in the City of Waskom.

4.7     Upon information and belief, Defendants Tractor-Trailer was a "thru truck" as its destination was not within the City of Waskom.

4.8     Upon information and belief, Defendants AFCO Steel and/or Hirschfeld authorized, directed and/or ratified the driving of the Tractor-Trailer thru the City of Waskom.

4.9     The City of Waskom prohibits parking on the shoulder and has signs posted "NO PARKING on R.O.W." as shown here:



4.10    Defendants AFCO Steel, Hirschfeld and Higgins knew or should have known that parking on the Emergency Shoulder was prohibited in the City of Waskom.

4.11    Defendants AFCO Steel, Hirschfeld and Higgins knew or should have known that parking tractor-trailers on an Emergency Shoulder is dangerous.

4.12    After driving past the NO THRU TRUCKS and NO PARKING signs, it appears Defendant Higgins drove the Tractor-Trailer across the double yellow no crossing dividing lines of US 80 and crossed over into the westbound lanes of oncoming traffic and consciously decided to park the Tractor-Trailer on the westbound side of the roadway facing the wrong direction of travel while occupying and obstructing the Emergency

Shoulder. Further, upon information and belief, Defendants trailers and load were not properly marked with the requisite conspicuity reflective taping and devices and/or such taping and devices were not clean and properly visible.

4.13   It is not yet known exactly how long Defendants' Tractor-Trailer had been parked on the Emergency Shoulder, but it was sufficiently long for Defendant Higgins to crawl into the sleeping berth to take a nap.

4.14   Prior to taking a nap, Defendant Higgins did not activate his emergency flashers, nor did he place any emergency warning flares, reflective triangles, orange cones or any other warning devices out to warn the traveling public of his parked Tractor-Trailer as required by Federal Motor Carrier Safety Administration Regulations and Texas Law.

4.15   Upon information and belief, there was no emergency or mechanical failure excusing or permitting the dangerous parking of Defendants' Tractor Trailer on the Emergency Shoulder.  Indeed, as stated herein, Defendant Higgins was simply napping in the Tractor-Trailer when the violent collision occurred.

4.16   Upon information and belief, Defendants AFCO Steel and/or Hirschfeld authorized, directed and/or ratified the parking of the Tractor-Trailer on the Emergency Shoulder.

4.17   The violent collision at issue occurred in the early morning hours of May 16, 2019 at or around 3:00am.  Hence, it was dark.

4.18   At the time of the collision, Plaintiff Jeremy Rials was operating a GMC Sierra westbound on US Highway 80 near the location where Defendant Higgins consciously chose to park the Tractor-Trailer on the side of the highway. Plaintiff lost

control of his vehicle due to a mechanical issue. Plaintiff attempted to maneuver his vehicle to safety, but Plaintiff's vehicle violently crashed into the side of Defendants' trailers because Defendants had wrongfully and illegally parked in the Emergency Lane, facing the wrong direction, without any flashers, flares, reflective cones or triangles, or any other warning devices and/or without the requisite conspicuity reflective taping and devices and/or such taping and devices were not clean and properly visible.

4.19  As a proximate result of the Defendants' negligence, negligence per se, and gross negligence which caused the collision between the two vehicles as herein described, Plaintiff suffered catastrophic and permanent personal bodily injuries, including a traumatic brain injury.

### V.  PLAINTIFF'S CLAIMS OF NEGLIGENCE, NEGLIGENCE PER SE, AND GROSS NEGLIGENCE AGAINST ALL DEFENDANTS

5.1  All preceding statements and allegations of the complaint are incorporated and realleged as if expressly set forth herein.

5.2  Defendants had a duty to exercise the degree of care that a reasonably careful licensed commercial motor carrier and that a reasonably careful licensed commercial motor vehicle operator would use to avoid creating unnecessary hazards and causing harm to others under similar circumstances.

5.3  Defendants were subject to and required to obey the minimum safety standards established by the Federal Motor Carrier Safety Regulations ("FMCSR") (49

CFR § 301-399), either directly or as adopted under Texas law and the Texas Commercial Motor Vehicle Drivers Handbook. Upon information and belief, Defendants will be shown to have committed negligence, negligence per se, and gross negligence by violating the following, including but not limited to:

    A.    § 383 Commercial Driver's License Standards;

    B.    § 390 General;

    C.    § 391 Qualifications of Drivers;

    D.    § 392 Drivers of Commercial Motor Vehicles;

    E.    § 393 Parts and Accessories Necessary for Safe Operation;

    F.    § 395 Hours of Service; and

    G.    § 396 Inspections, Repairs and Maintenance.

5.4    Defendants AFCO Steel and/or Hirschfeld were required to teach and train Higgins so that he was able to understand and obey the rules and regulations contained in the FMCSR and as adopted under Texas law and the Texas Commercial Motor Vehicle Drivers Handbook.

5.5    Upon information and belief, the negligence, negligence per se, and gross negligence, and careless breach of duty by Defendants AFCO Steel, Hirschfeld and Higgins, consisted of, but is not limited to, the following acts and/or omissions:

    A.    Defendants AFCO Steel, Hirschfeld and Higgins created a hazard to the travelling public, including Plaintiff, by parking on and obstructing the Emergency Shoulder;

    B.    Defendants AFCO Steel, Hirschfeld and Higgins failed to comply with industry standard and practice as well as Texas law when its

driver failed to comply with Federal Motor Carrier Safety Regulation 392.22, mandating that the driver place warning devices and operate emergency flashers when creating a hazard to oncoming traffic by stopping on the Emergency Shoulder of a highway. As also described by the Texas Commercial Driver's License Manual, 2.5.2 – "If you must stop on a road or the shoulder of any road, you must put out your emergency devices within ten minutes. Place your warning devices at the following locations:





If you must stop on or by a one-way or divided highway, place warning devices 10 feet, 100 feet, and 200 feet toward the approaching traffic. See Figure 2.8.

Figure 2.8

    C.    Defendants AFCO Steel and/or Hirschfeld failed to train, educate, monitor and supervise its driver Higgins regarding the prohibitions of parking on the Emergency Shoulder and the dangers associated therewith, and the limited exceptions permitting such parking in a true emergency;

    D.    Defendants AFCO Steel and/or Hirschfeld failed to train, educate, monitor and supervise its driver Higgins how to properly and timely warn oncoming traffic of hazards created by parking on the Emergency Shoulder or to promptly remove such hazards;

    E.    Defendants AFCO Steel, Hirschfeld and Higgins failed to ensure that the Tractor-Trailer was equipped with the requisite conspicuity reflective taping and devices and/or ensure that such taping and devices were clean and properly visible;

    F.    Defendants AFCO Steel and/or Hirschfeld failed to train, educate, monitor and supervise its driver Higgins how to properly equip and/or inspect the Tractor-Trailer for the requisite conspicuity

        reflective taping and devices and/or how to clean such taping and devices to ensure the equipment is properly visible;

G.    Defendants AFCO Steel and/or Hirschfeld negligently failed to obtain a proper permit for this oversized load;

H.    Alternatively, Defendants AFCO Steel, Hirschfeld and Higgins negligently deviated from the route, dates, times and/or other terms mandated by the permit by traveling through the City of Waskom, Texas;

I.    Defendants AFCO Steel, Hirschfeld and Higgins negligently planned the route and drive times associated with hauling this oversized load so as to avoid driving thru the City of Waskom which prohibited thru trucks and/or in the unsafe parking of the Tractor-Trailer on the Emergency Shoulder;

J.    Defendants AFCO Steel, Hirschfeld and Higgins were negligent in failing to locate alternate locations to safely park their Tractor-Trailer, including but not limited to the many truck stops, parking lots and/or rest stops that Defendant Higgins passed along his way and/or that were in the vicinity of his eastbound travels;

K.    Defendants AFCO Steel, Hirschfeld and Higgins were negligent in failing to conduct proper maintenance and/or pre-trip inspections to ensure that the Tractor-Trailer was in good mechanical order; that all reflective strips and reflectors were in good condition, were clean, and in good visible order; and that it was equipped with all the requisite warning devices required under the Federal Motor Carrier Safety Regulation and under Texas law;

L.    Defendants AFCO Steel and/or Hirschfeld negligently hired, trained, retained, monitored and supervised its driver Higgins with regard to the above matters and others to be determined through discovery. Defendants AFCO Steel and/or Hirschfeld knew or should have known Higgins was an incompetent and dangerous driver; and

M.    Other negligent acts and omissions to be supplemented after a reasonable opportunity to conduct formal discovery.

5.6    Further, Plaintiff would show that Defendants AFCO Steel, Hirschfeld and

Higgins violated established industry standards, applicable regulations and state law, which proximately caused Plaintiff's damages, losses, harms, and injuries, including but not limited to the additional following standards and regulations:

> 49 CFR 392.22(b) **Placement of Warning Devices** - whenever a commercial motor vehicle is stopped upon the traveled portion or the shoulder of a highway … the driver shall, as soon as possible, but in any event within 10 minutes, place the warning devices required by § 393.95 of this subchapter, in the following manner:
>
>> (1) One on the traffic side of and 4 paces (approximately 3 meters or 10 feet) from the stopped commercial motor vehicle in the direction of approaching traffic;
>>
>> (2) One at 40 paces (approximately 30 meters or 100 feet) from the stopped commercial motor vehicle in the center of the traffic lane or shoulder occupied by the commercial motor vehicle and in the direction of approaching traffic; and
>>
>> (3) One at 40 paces (approximately 30 meters or 100 feet) from the stopped commercial motor vehicle in the center of the traffic lane or shoulder occupied by the commercial motor vehicle and in the direction away from approaching traffic.
>
> 49 CFR 393.95(f) **Warning Devices for Stopped Vehicles** - Except as provided in paragraph (g) of this section, one of the following options must be used:
>
>> (1) Three bidirectional emergency reflective triangles that conform to the requirements of Federal Motor Vehicle Safety Standard No. 125
>>
>> (2) §571.125 of this title; or
>>
>> (3) At least 6 fuses or 3 liquid-burning flares. The vehicle must have as many additional fuses or liquid-burning flares as are necessary to satisfy the requirements of §392.22.

(4) Other warning devices may be used in addition to, but not in lieu of, the required warning devices, provided those warning devices do not decrease the effectiveness of the required warning devices.

  

49 CFR 392.1 – Every commercial vehicle driver must comply with these rules; and

49 CFR 392.2 – Every commercial vehicle must comply with Federal Motor Carrier Safety regulations.

Texas Transportation Code Sec. 547.506. DISPLAY OF DEVICES: VEHICLES OFF ROADWAY. The operator of a vehicle described by Section 547.503(b) or an explosive cargo vehicle that is stopped entirely on the shoulder at a time and in a place referred to in this subchapter shall place required warning devices on the shoulder as close as practicable to the edge of the roadway.

Texas Transportation Code Sec. 547.503. (b) This section applies to a truck, bus, truck- tractor, trailer, semitrailer, or pole trailer at least 80 inches wide or at least 30 feet long.

The corresponding Federal Motor Carrier Safety Regulations and corresponding adoptions by Texas of such regulations under Texas Administrative Code 4.11 also provide a basis for negligence, negligence per se, and gross negligence, all being a proximate cause of the damages to the Plaintiff from the conduct of Defendants.

5.7     Upon information and belief, Defendants AFCO Steel and/or Hirschfeld failed to properly monitor its driver's electronic driving logs, contrary to the Federal Motor Carrier Safety Regulations. Defendants AFCO Steel and/or Hirschfeld had a duty to make sure its driver complied with the federal and state regulations, and that all such driving logs were accurate and in compliance with the law.

5.8     Defendants AFCO Steel, Hirschfeld and Higgins also specifically breached a duty imposed by Texas Transportation Code § 545.401 by operating the Tractor-Trailer in willful or wanton disregard for the safety of persons or property. This statute specifically applies to (1) a private access way or parking area provided for a client or patron by a business, other than a private residential property or the property of a garage or parking lot for which a charge is made for the storing or parking of motor vehicles; and (2) a highway or other public place.

5.9     Plaintiff is within the class of persons intended to be protected by the Texas Transportation Code and the FMCSR in that, at the time of this wreck and his losses, harms and injuries, Plaintiff was operating motor vehicle on a public roadway.

5.10    Plaintiff's injuries were proximately caused by the negligent acts and/or omissions of Defendant Hirschfeld and/or Defendant AFCO Steel in, but not limited to, the following particulars:

    A.    Failure to properly and fully review the training, experience and background of Defendant Higgins prior to hiring him as a driver;

    B.    Failure to properly and fully train Defendant Higgins as to the proper utilization of and compliance with hours of service;

  C. Failure to properly and fully train Defendant Higgins as to when and how to properly utilize the improved shoulder of a highway;

  D. Failure to properly and fully train Defendant Higgins as to the proper locations and facilities to utilize when needing to rest between hours of service;

  E. Failure to properly and fully train Defendant Higgins as to the proper method for warning traffic that his tractor-trailer is parked on the shoulder of the highway;

  F. Failure to supervise whether Defendant Higgins was in compliance with his hours of service;

  G. Failure to supervise whether Defendant Higgins was utilizing the improved shoulder in proper circumstances;

  H. Failure to supervise whether Defendant Higgins was utilizing proper rest facilities between hours of service; and

  I. Failure to supervise whether Defendant Higgins was utilizing proper methods set out in the 49 CFR § 392.22 for warning oncoming traffic that his tractor-trailer was parked on the side of the road.

5.11 Upon information and belief, the negligent acts and/or omissions of Defendants AFCO Steel, Hirschfeld and Higgins as set forth herein constitute an entire want to care as to indicate that such acts and/or omissions were the result of conscious indifference to the rights, safety and welfare of others, including Plaintiff Jeremy Rials, and thus amount to gross negligence as that term is defined by the laws of the State of Texas. The acts and/or omissions of Defendants AFCO Steel, Hirschfeld and Higgins, when viewed objectively from their standpoint at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further, upon information and belief, Defendants AFCO Steel, Hirschfeld and

Higgins had actual, subjective awareness of the risks involved, yet nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, including Plaintiff Jeremy Rials. As such, the jury should consider assessing punitive or exemplary damages against each Defendant.

5.12    Plaintiff's injuries, harms and losses were proximately caused by all Defendants' negligence, negligence per se, and gross negligence, as well as a careless breach of their duty to the public.

## VI.    PERSONAL INJURIES AND DAMAGES

6.1    As a proximate result of Defendants' negligence, negligence per se, and gross negligence, Plaintiff has suffered severe bodily, economic and mental injuries. Consequently, Plaintiff is seeking compensation for the following damages:

   a. Medical Expenses: Plaintiff has incurred bodily injuries. Plaintiff has incurred medical expenses in connection with said injuries and will also incur future medical expenses;

   b. Lost Wages: Plaintiff has lost wages. Plaintiff has also suffered a loss of earning capacity;

   c. Physical Pain: Plaintiff has endured physical pain in the past and will endure pain in the future;

   d. Mental Anguish: Plaintiff has endured mental anguish in the past and will endure mental anguish in the future; and

   e. Impairment: Plaintiff has endured physical impairment and cognitive impairment in the past and will continue to suffer the effects in the future.

6.2    In all reasonable probability, Plaintiff will continue to suffer from these injuries for the rest of his lives and is seeking compensation for such future damages.

6.3     In light of gross negligence of Defendants AFCO Steel, Hirschfeld and Higgins, the jury should consider assessing punitive or exemplary damages against each Defendant.

## VII. JURY DEMAND

7.1     Plaintiff asserts his rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues herein.

## VIII. PRAYER FOR RELIEF SOUGHT

8.1     WHEREFORE, PREMISES CONSIDERED, Plaintiff prays and requests that Defendants be cited to appear and answer and that this case be tried after which Plaintiff recover from and have judgment against Defendants, jointly and severally:

a. For the actual past and future damages indicated above and/or proved at trial to fully compensate Plaintiff for his harms and losses suffered;

b. For any punitive or exemplary damages determined appropriate by the trier of fact;

c. Prejudgment interest at the maximum amount allowed by law;

d. Post-judgment interest at the maximum rate allowed by law;

e. Costs of suit; and

f. Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,


By: /s/Jason B. Stephens
    Jason B. Stephens
    Texas State Bar No. 24003001
    Stephens Law Firm, PLLC
    1300 S. University Dr., Suite 406
    Fort Worth, Texas 76107
    (817) 420-7000
    (817) 420-7777 facsimile
    jason@stephenslaw.com
    **LEAD COUNSEL FOR PLAINTIFF**


 /s/Patrick R. Jackson
Patrick R. Jackson
Texas State Bar No. 24002341
Patrick R. Jackson, APLC
4442 Viking Dr., #100
Bossier City, LA 71111
(318) 752-3335
(318) 752-3315 facsimile
pjackson@bossierlawoffice.com
**ATTORNEYS FOR PLAINTIFF**

**PLEASE SERVE:**

George Monroe Higgins
45 County Road 752
Verbena, Alabama 36091

Hirschfeld Steel Group, LP.
*That can be served through its registered agent*;
Robert J. Conner
1400 Civic Place, Suite 250
Southlake, TX 76092

W&W-AFCO Steel, LLC
*That can be served through its registered agent*;
C.T. Corporation System
1999 Bryan St. Ste. 900
Dallas, TX 75201